RECEIVED
IN LAKE CHARLES, LA
DEC 0 5 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| FRANCES DELON | : | DOCKET NO. 2:04 CV 1419 |
| VS. | : | JUDGE MINALDI |
| LCR-M LIMITED PARTNERSHIP | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Presently before the court is a Motion for Summary Judgment [doc. 28] filed by the defendant, LCR-M Limited Partnership ("LCR-M"). This motion has been opposed by the plaintiff, Frances Delon ("Delon").

The plaintiff is claiming sex and age discrimination, as well as hostile work environment and retaliation.

Facts

LCR-M is an "employer" as defined by the Civil Rights Act of 1964.[1]

Frances Delon was employed by LCR-M from September 1996 to May 19, 2003.[2] She was originally hired as a secretary[3], but she had been promoted to sales by the time of her termination.

---

[1] The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person... 42 U.S.C.A. § 2000e.

[2] Delon depo. pp. 56-57.

[3] Delon does not allege discrimination from 1996-2001, while she worked in a clerical position. Delon depo. pp. 57-58, 64. The plaintiff testified that she had complained to George Cavys, Vice President of LCR-M, about Seeburn Chaumont during this period of time.

The plaintiff alleges that, in the position of inside sales at the Lake Charles office, she became the highest producing salesperson in the Lake Charles store and she was among the top sales producers in the region. Delon was repeatedly commended for "outstanding" sales.

LCR-M has strict policies prohibiting harassment and discrimination in the workplace. The company not only encourages, but requires employees to report conduct which they believe constitutes discrimination or harassment. The policies assure employees that they will not face retaliation for lodging such complaints.[4] Delon was aware of LCR-M's harassment and discrimination policy early in her employment.[5] The plaintiff testified that although she had been given an Employee Handbook, the policies had not been explained.[6]

Bobby Soileau ("Soileau") became Delon's supervisor in February 2001. Soileau made recommendations that Delon no longer be in sales as part of his business plan in 2002[7], but he did not terminate her employment, nor did he recommend termination.[8] By November 2001, Delon's working relationship with Soileau was "very tense."[9] The plaintiff heard a rumor that Soileau was

---

Chaumont would time Delon when she went to the restroom and would make her wear a headset into the restroom so that she could answer the phone. He would also pull papers off the fax machine and then drop them on the floor. He would go to his office and ask Delon to bring him the papers he had just dropped. The plaintiff stated that she thought that Chaumont's timing her in the restroom was harassment, but after she reported it to Cavys, this behavior stopped. Delon depo. pp. 64-68.

[4] Delon depo. pp. 61-61; Delon Exhs. 3-7; Soileau depo. pp. 24-29.

[5] Delon depo. pp. 61-63; Delon Exhs. 3-7.

[6] Delon depo. p. 69.

[7] Soileau depo. p. 67.

[8] Soileau depo. pp. 73-74.

[9] Delon depo. 134.

2

planning to terminate her and a male employee about the same time.[10]

By the end of 2001, Soileau had determined that Delon was not the type of person that he wanted in showroom sales. He testified that he did not like the confrontations, customer issues and service problems caused by Delon.[11] Delon testified that Soileau told her that she wasn't "showroom material." He told her that she was "too short and too fat."[12] Soileau testified that he found Delon to be pushy and confrontational toward other employees and customers.[13]

Soileau gave Delon a disciplinary write-up for excessive tardiness and inaccurate time sheets in November 2001.[14] Delon believed that this warning was unfair because others were tardy, yet none had been reprimanded.[15] She admitted to sometimes making errors on her time sheets as she completed those at the end of any given week. If she made a mistake and realized it, she would correct the report.[16]

In June 2002, Soileau gave Delon a raise.[17]

In November 2002, Soileau gave Delon a Performance Appraisal and rated her as needing

---

[10] Delon depo. pp. 133-137.

[11] Soileau depo. p. 95.

[12] Delon depo. p. 137.

[13] Delon testified that Soileau never told her that she was too pushy. Soileau mentioned in a sales meeting that he did not want the sales personnel sounding like "used car salesmen." Delon depo. p. 162.

[14] Delon depo. p. 131.

[15] Delon depo. p. 132.

[16] Delon depo. 133.

[17] Delon depo. pp. 138-140.

improvement in nearly half of the categories on the form.[18] This Performance Appraisal consisted of a "self-assessment" followed by a "supervisor assessment." This is the only written assessment Delon remembers receiving, even though she was reviewed quarterly by Soileau and she asserts that she had not seen the part of the report completed by Soileau prior to her deposition. Prior supervisors, Jay Walthall and Seeburn Chaumont, had conducted annual reviews.[19]

Soileau received complaints about Delon from coworkers Shayne Owens, Katie Hooper, and Misty Smith, all female, as well as from Dennis Arendt and Phil Broussard.[20] Soileau also received complaints from customers about Delon. Soileau discussed his concerns with her.[21]

Delon admits that she had problems with her supervisor and coworkers.[22] Delon admitted that Frank Abate, an important customer, asked to have her removed from his accounts, although Delon asserted that Abate had removed all sales personnel from his accounts in an effort to maximize his profits.[23] She testified that Shayne Owens did not want her working on Micky McMillen's[24] account.[25]

---

[18] Soileau depo. p. 68.

[19] Delon depo. pp. 143-150.

[20] LCR-M notes that Arendt is 59, Broussard is 63 and both are still employed at the store. Delon alleges that all *women* hired by Soileau were under the age of 25. Delon depo. pp. 203-204.

[21] Delon depo. pp. 151-161.

[22] Delon depo. pp. 157-159, 164-170, and 177.

[23] Delon depo. p. 152.

[24] Abate's and McMillan's accounts were two of the largest accounts at LCR-M.

[25] Delon depo. p. 157-158.

4

Delon alleges that her sales productivity at LCR-M remained high during and up to the time of her termination. Delon asserts that she was the number one person in sales volume and profitability in the Lake Charles store for much of 2002 through February, 2003.

Prior to and after January 2003, Delon reported alleged incidents of sexual harassment[26] and a hostile work environment to her supervisors, Karl Triche, Bobby Soileau and Lee Cormier.[27] She reported to Triche that she was having difficulty at work and she was afraid of losing her job because she had reported Soileau's activities with Smith.[28]

Soileau testified that he had not heard any of the comments that were allegedly directed at Delon. He acknowledged that such comments, if made in the workplace, would be inappropriate.[29]

Delon called Karl Triche on January 31, 2003, to report an incident that she allegedly witnessed between Soileau and Smith at the Lake Charles store. Delon contends that she walked into Smith's office one evening and saw Smith and Soileau embracing and possibly having sex.[30] The plaintiff informed Triche that she was afraid that she would lose her job for reporting this incident

---

[26] Delon depo. pp. 87, 75, 160.

[27] Delon depo. pp. 72-74, 218.

[28] This activity between Soileau and Smith was alleged to have been an affair which Soileau asserts never happened. Soileau depo., p. 31.

[29] Soileau depo. pp. 36-38. The plaintiff's assertion that the defendant admitted that the alleged actions toward Delon were offensive is a misstatement based on the cited deposition testimony. See Soileau, 38, 40-41; Triche at 53-55; and Cormier at 67, 68. At the most, based on these deposition excerpts, these gentlemen agreed that *if* such actions took place, they *could* be offensive.

[30] Delon depo. pp. 228-229; Soileau indicates that the scenario described by Delon did not occur. Soileau depo., pp. 31-32.

5

and that she had heard a rumor that Soileau was training Smith to replace her in the showroom.[31] Triche thanked the plaintiff for bringing this to his attention and advised her that she would not be terminated for reporting this incident, that she would only be terminated for performance related issues.[32]

The plaintiff's co-workers assert that problems with Delon began before she reported this incident between Soileau and Smith.[33]

Delon was terminated May 19, 2003. Soileau asserts that this decision was based on numerous and consistent complaints made about Delon from co-workers and customers[34] and on Delon's attitude, confrontations with customers and the drain of the morale of the overall workplace.[35]

In July 2003, Delon filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging claims of age and gender discrimination, and retaliation.

## Summary Judgment Standard

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of

---

[31] Delon depo. pp. 225-227.

[32] Delon depo. pp. 221-223.

[33] Affidavits of Soileau, Owens, Broussard, Hooper and Arendt.

[34] Affidavit of Soileau ¶¶ 6-8.

[35] Soileau depo., p. 104.

material fact, and that the moving party is entitled to summary judgment as a matter of law.[36] When the nonmoving party has the burden of proof on an issue, the movant must state the basis for the motion and identify those portions of the pleadings, depositions, admissions, answers to interrogatories, together with affidavits, that demonstrate the absence of a genuine issue of material fact.[37] A mere conclusory statement that the other side has no evidence is not enough to satisfy a movant's burden.[38]

Once the movant has shown the absence of material factual issues, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts demonstrating that there is a genuine issue for trial.[39] The Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment.[40] However, a party opposing summary judgment may not rest on mere conclusory allegations or denials in his

---

[36] Fed.R.Civ.P. 56(c); See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 2552-54, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88, 106 S.Ct. 1348, 1355-57, 89 L.Ed.2d 538 (1986).

[37] *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Topalian v. Ehrman*, 954 F.2d 1125, 1131-32 (5th Cir.1992), cert. denied, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). A "material" fact is one that might affect the outcome of the suit under the applicable substantive law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In order for a dispute to be "genuine," the evidence before the Court must be such that a reasonable jury could return a verdict for the nonmoving party. *Id.*, see also, *Judwin Properties, Inc. v. United States Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir.1992).

[38] See *Celotex*, 477 U.S. at 328, 106 S.Ct. at 2555.

[39] Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

[40] *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456-58, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

pleadings.[41]

## Analysis

Delon alleges that she was subjected to a sexually harassing atmosphere while at work which altered the terms and conditions of her employment. She also alleges that she was retaliated against by LCR-M for reporting both a hostile work environment and potentially *quid pro quo* sexual harassment.

In a Title VII sexual harassment suit, the plaintiff must establish a *prima facie* case by showing that (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment complained of affected a "term, condition or privilege of employment"; and (5) the employer knew or should have known of the harassment but failed to remedy the situation.[42]

Delon belongs to a protected class. There is, however, no competent summary judgment evidence that: she was subjected to unwelcome harassment, the harassment was based on sex, the harassment complained of affected a "term, condition or privilege of employment."[43] Because the plaintiff has not established the second, third and fourth elements, the court does not need to discuss the fifth element, whether LCR-M knew or should have known of the harassment but failed to remedy the situation.

LCR-M argues that the plaintiff's claim of a sexually hostile work environment is "based

---

[41] Fed.R.Civ.P. 56(e); see also *Topalian*, 954 F.2d at 1131.

[42] *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir.1995).

[43] *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir.1995).

8

strictly on comments or jokes which she contends were made periodically during her employment."[44]

When asked about sexual comments by Shayne Owens, Misty Smith and Katie Hooper, the plaintiff indicated that their comments were brief, although they were made "a couple of times a week."[45] Delon indicated that she did not report these comments because she had more important things on her mind and she was just trying to do her job.[46]

Delon testified that she knew that Lee Wall Cormier was the proper person to whom she should report sexual harassment. Delon alleges that she wrote a letter to Cormier explaining everything that was happening to her[47] and about the alleged affair between Soileau and Smith. She did not keep a copy of the letter and did not indicate that any action was taken by Cormier on her complaints.[48]

Delon also admits to participating in the sexual comments occurring in the office. She testified that when others spoke of sexually explicit matters, she "played along with it" and just laughed.[49] Later in her deposition, when asked if she ever talked about sexually explicit matters on the job, she answered "maybe in response to them."[50] Delon acknowledged that she "romantically"

---

[44] Memorandum in Support of Summary Judgment, p. 19; Delon depo. Pp. 75, 77-78, 160.

[45] Delon depo. 264.

[46] Delon depo. p. 264.

[47] That customers were being redirected away from her, sexual comments, sexual jokes, problems with Shayne Owens. Delon depo. pp 71-74.

[48] Cormier testified that she never received a complaint from Delon and knew nothing of these alleged acts until she heard from Triche after his telephone call with Delon.

[49] Delon depo. p. 87

[50] Delon depo. p. 206.

9

kissed a co-worker, a married man, while she was an administrative assistant.[51]

In order to sustain her burden of proof on this element, Delon must demonstrate that LCR-M's conduct is " 'unwelcome' in the sense that she did not solicit or incite it, and in the sense that she regarded the conduct as undesirable or offensive."[52] Delon's participation in the sexually-charged atmosphere of the office undermines her allegation that she was subject to unwelcome harassment.[53]

Even assuming that Delon was subjected to unwelcome harassment, the third element necessary to establish discrimination is that the harassment was based on sex. In discussing Delon's alleged letter to Cormier detailing her complaints and questioning about the basis of the alleged discrimination, Delon was asked "you're not contending that it was because you're female, do you?" Delon answered "no."[54] Delon said that she thought the discrimination was based on her age.[55]

The fourth element of the plaintiff's hostile work environment claim is that the harassment

---

[51] Delon. pp. 208-209. LCR-M alleges that Delon also purchased a vibrator that she had delivered to the workplace. Delon testified, however, that she purchased the vibrator, and the woman from who she purchased it could not reach Delon at home to arrange delivery. The woman knew where Delon worked, so she delivered it in a plain brown bag, stapled shut with Delon's name on it. Employees at the desk took it upon themselves to open the bag and show everyone the vibrator. Delon pp. 209-210.

[52] *Balletti v. Sun-Sentinel Co.*, 909 F.Supp. 1539, 1547 (S.D.Fla.1995) [FN23] (quoting *Henson v. City of Dundee*, 682 F.2d 897, 903 (11th Cir.1982)). "Where a plaintiff's action in the work place shows that she was a willing and frequent participant in the conduct at issue, courts are less likely to find that the conduct was 'unwelcome' or 'hostile.' " *Id.* (citations omitted).

[53] *See, e.g. Disler v. Target Corp.*, 2005 WL 2127813, *17 (E.D.Tenn.) (E.D.Tenn., 2005).

[54] Delon depo. p. 104

[55] Delon depo. pp. 104-106. As stated earlier, the plaintiff has waived her age discrimination claims in her opposition to the summary judgment.

complained of affected a term, condition or privilege of employment. To survive summary judgment, Delon is required make a prima facie showing that the complained of conduct was sufficiently severe and pervasive to alter the conditions of her employment.[56] Title VII "forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment".[57] Workplace conduct is not measured in isolation; instead, "whether an environment is sufficiently hostile or abusive" must be judged "by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' "[58] Simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not amount to discriminatory changes in the 'terms and conditions of employment.' "[59]

Delon has not introduced competent summary judgment evidence to establish a *prima facie* showing that the alleged sexual comments were severe and pervasive enough to affect the term or

---

[56] *Clark County School Dist. v. Breeden*, 532 U.S. 268, 270, 121 S.Ct. 1508,1509 - 1510 (U.S.,2001); *Faragher v. Boca Raton*, 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (some internal quotation marks omitted)). See also *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 752, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (Only harassing conduct that is "severe or pervasive" can produce a "constructive alteratio[n] in the terms or conditions of employment").

[57] *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)

[58] *Faragher v. Boca Raton, supra*, at 787-788, 118 S.Ct. 2275 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

[59] *Faragher v. Boca Raton, supra*, at 788, 118 S.Ct. 2275 (citation and internal quotation marks omitted); *Clark County School Dist. v. Breeden*, 532 U.S. 268, 270-271, 121 S.Ct. 1508,1510 (U.S.,2001).

condition of her employment. The majority of the argument offered to support Delon's position is based solely on her own self-serving testimony. She indicated that there witnesses to some of the alleged events, yet she did not offer deposition testimony or affidavits from the witnesses. She offered no corroborating evidence to support her testimony. Considering that the plaintiff has not established the second, third or fourth elements or her claim, the court need not go further in its analysis. Summary judgment on the hostile work environment claim will be granted.

The remaining issue is Delon's claim of retaliation. She asserts that she lost her job because she reported an alleged affair between her supervisor, Bobby Soileau and Misty Smith. Title VII retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework.[60] Within that framework, the plaintiff must first establish a prima facie case of the three elements of retaliation: (1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action."[61]

An employee has engaged in protected Title VII activity if she has "(1) 'opposed any practice made an unlawful employment practice by this subchapter,' or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'"[62]

---

[60] *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 330 (5th Cir.2004). *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

[61] *Brazoria County v. EEOC*, 391 F.3d 685, 692 (5th Cir.2004) (emphasis and quotation omitted).

[62] *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427-28 (5th Cir.2000) (emphasis omitted) (quoting 42 U.S.C. § 2000e-3(a)).

The relevant clause is the opposition clause, because Delon never participated in any formal Title VII proceedings, but merely complained to Triche. The opposition clause requires that the employee demonstrate that he or she had at least a "reasonable belief" that the opposed practice was unlawful.[63]

Delon argues that she reasonably believed that Soileau and Smith had an intimate relationship, that Soileau favored Smith[64], was planning to replace her as salesperson with Smith[65], and that this favoritism amounted to discrimination in violation of Title VII. The court has held, however, that " '[W]hen an employer discriminates in favor of a paramour, such an action is not sex-based discrimination, as the favoritism, while unfair, disadvantages both sexes alike for reasons other than gender.' "[66] Even if Delon's allegation that Smith was receiving preferential treatment because of her relationship with Soileau were true, such "paramour favoritism" is not an unlawful employment practice under Title VII. It is settled law in this Circuit that such paramour favoritism does not run afoul of Title VII.[67] Delon has not satisfied the first prong of a *prima facie* case of retaliation, that she engaged in a activity protected by Title VII.

Even if Delon's report to Triche constituted a protected activity, the evidence shows that there were complaints about Delon's aggressive and confrontational style before she made her

---

[63] *Id.* at 428 (citing *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. Unit A Sept.1981)).

[64] Delon depo. pp. 228-229.

[65] Delon testified that she heard these rumors in December, 2001, prior to her complaint to Triche. Delon depo. pp. 137-138.

[66] *Ackel v. Nat'l Communications., Inc.*, 339 F.3d 376, 382 (5th Cir.2003) (quoting *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 656 n. 6 (5th Cir.2002)).

[67] *See, e.g., Wilson v. Delta State Univ.*, 2005 WL 1939678 (5th Cir. 2005); *Ellert v. University of Texas*, 52 F.3d 543, 5th Cir. 1995).

13

complaint[68] and that her relationship with co-workers and customers was poor.[69] Accordingly, no causal connection links the protected activity with her termination[70] and the third element of a retaliation claim has not been established.

There is no genuine issue of material fact that Delon's complaint to Triche was not a protected activity and that there has been no casual link established between her complaint and her termination.

Accordingly, LCR-M's Motion for Summary Judgment on the plaintiff's hostile work environment and retaliation claims will be granted.

Lake Charles, Louisiana, this ____ day of December, 2006.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[68] Deposition of Soileau; Affidavits by Arendt, Owens.

[69] Delon depo. pp. 158-159.

[70] *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 463-64 (6th Cir.2001)